1
2
3
4
5

6       IN THE UNITED STATES DISTRICT COURT FOR THE

7                    EASTERN DISTRICT OF CALIFORNIA

8

| | | |
|---|---|---|
| 9 | JACLYN CORNELIA WILHITE, ) | 1:11-CV-1692  AWI JLT |
| 10 | ) Plaintiffs, ) | ORDER ON DEFENDANTS' |
| | v. ) | MOTIONS TO DISMISS AND |
| 11 | ) CITY OF BAKERSFIELD, et al., ) | ORDER ON PLAINTIFF'S MOTIONS |
| 12 | ) Defendants. ) | (Doc. Nos. 7, 8, 10, 11, 13, 24, 28, |
| 13 | ) | 29, 42) |

14
15
16

        This case stems from the arrest of Plaintiff Jaclyn Wilhite ("Wilhite") by Defendant City

17   of Bakersfield ("the City") police officers and from civil proceedings initiated by Wilhite.

18   Wilhite is proceeding pro se and originally filed suit in the Kern County Superior Court on

19   October 19, 2010.  The operative complaint is the Third Amended Complaint ("TAC").  The

20   TAC includes sixteen causes of action, including three claims under 42 U.S.C. § 1983, and

21   identifies twelve defendants, although it does not appear that all of the defendants have been

22   served.  Defendants removed this case on October 11, 2011, and filed four separate motions to

23   dismiss.[1]  Wilhite filed untimely oppositions and other motions, but was prohibited from being

24   heard at oral argument pursuant to Local Rule 230.  Defendants filed replies at the direction of

25   the Court.  After considering the filings of the parties, the motions to dismiss will be granted in

26   part.

27
        _____

28      [1]Five motions to dismiss actually appear on the Court's Docket, including a "corrected" motion by the Kern
     County Defendants.  The Court will focus on the County's corrected motion for purposes of this order.

1                                    **BACKGROUND**[2]

2          From the TAC, on November 1, 2009, Wilhite was attacked in her home by her

3   roommate, Theresa Pori, with a 4 ½ foot stick for 10 minutes.  Wilhite called for emergency

4   help, and members of the Bakersfield Police Department arrived several minutes later.  The

5   officers met Wilhite outside of her home.  Two of the officers, Defendant Johns and Defendant

6   Pair, approached Wilhite and abruptly arrested her for aggravated assault with a deadly weapon,

7   even though Wilhite was the victim of the assault and had not committed the crime.  The officers

8   failed to collect evidence, failed to competently investigate the situation, and failed to provide

9   medical treatment to Wilhite.  Johns and Pair made false and defamatory reports against Wilhite,

10  including misrepresentations regarding the presence of witnesses and the need for medical

11  treatment.

12         On November 2, 2009, Wilhite was booked after being brought to the jail on false

13  charges.  Four officers/deputies at the jail took Wilhite's personal information, and Wilhite was

14  escorted "upstairs" to receive new clothing.  Wilhite received no medical treatment for two days,

15  and no one, including defendant Deputy Singa, took photographs of Wilhite's injuries.  After

16  three days, Wilhite was never arraigned, and charges against Pori for battery were dropped.  The

17  failure to investigate and collect and preserve evidence prevented Wilhite from pursuing criminal

18  charges against Pori.  Further, while at the jail on November 2, 2009, defendant Deputy Maxwell

19  physically abused Wilhite by intentionally and repeatedly using excessive pressure on Wilhite's

20  fractured and bruised thumb, which caused her to scream several times.  Wilhite was released

21  from the jail late in the evening of November 4, 2009.

22         On November 5, 2009, Wilhite went to the Kern Medical Center via taxi cab to be treated

23  examined, and photographed.  The Medical Center had no camera and did not take photographs.

24  A doctor interviewed Wilhite and offered to have her left hand x-rayed to determine if her thumb

25  was fractured.  Wilhite refused the x-ray and left after waiting 6 ½ hours with a prescription for

26  pain medication.

27
        _____

28         [2]The TAC is 80 pages, largely repetitive, and not particularly clear.  This background is intended to be
    general in nature and represents the Court's best interpretation of the current allegations.

Between November 16, 2009, and January 18, 2010, Wilhite attempted to file charges against Pori.  However, the Kern County District Attorney's Office and Assistant District Attorney Valeta Wilde belittled Wilhite and refused to investigate the matter or file charges.

On January 21, 2010, the City of Bakersfield ("the City") and one of its employees promised Wilhite that she would receive a duplicate copy of the emergency call made by Wilhite.  However, despite this promise, a fraudulent copy was produced in that Wilhite's request for an ambulance was deleted from the produced recording.

On November 13, 2009, Wilhite filed a civil case against Pori in the Kern County Superior Court.  However, defendant Judge Brumfield and an unknown bailiff denied Wilhite fair and just hearings on multiple occasions through their management and control of the courtroom.  On December 17, 2009, Judge Brumfield improperly dissolved a restraining order against Pori.  On February 16, 2010, an unknown bailiff improperly prevented Wilhite from entering the courtroom.  On March 4, 2010, Judge Brumfield ruled against Wilhite and falsely reported that the defendants in the civil matter had submitted evidence that had not in fact been submitted.  Further, Judge Brumfield would not listen to the emergency recordings, held that photographs of Wilhite's wounds did not meet the necessary burden of proof, and permitted perjured testimony.  Judgment was entered against Wilhite on March 10, 2010.

On March 4, 2010, Wilhite attempted to file another request for a restraining order against Pori, but on March 5, 2010, Judge Brumfield refused to allow the matter to proceed.  On June 1, 2010, Wilhite filed another request for a restraining order against Pori, but Judge Brumfield again refused to allow the matter to proceed.

In October 2010, Wilhite filed this lawsuit in the Kern County Superior Court.  The County represents that, prior to removal, the Superior Court allowed Wilhite to amend her complaint and name Deputy Maxwell as Doe 5, Deputy Singa as Doe 6, and Valeta Wilde as Doe 8.  Further, the City's attorney has represented that Wilhite recently served Terrye Steiner, an employee of the Bakersfield Police Department Communications Center, with the complaint and named Steiner as Doe 11.  Steiner makes no arguments regarding the propriety of her service or being named as Doe 11.

1

## RULE 12(b)(6) FRAMEWORK

2   Under Federal Rule of Civil Procedure 12(b)(6)**,** a claim may be dismissed because of the

3   plaintiff's "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  A

4   dismissal under Rule 12(b)(6) may be based on the lack of a cognizable legal theory or on the

5   absence of sufficient facts alleged under a cognizable legal theory.  Johnson v. Riverside

6   Healthcare Sys., 534 F.3d 1116, 1121 (9th Cir. 2008); Navarro v. Block, 250 F.3d 729, 732 (9th

7   Cir. 2001).  In reviewing a complaint under Rule 12(b)(6), all allegations of material fact are

8   taken as true and construed in the light most favorable to the non-moving party.  Marceau v.

9   Blackfeet Hous. Auth., 540 F.3d 916, 919 (9th Cir. 2008); Vignolo v. Miller, 120 F.3d 1075,

10   1077 (9th Cir. 1999).  However, the Court is not required "to accept as true allegations that are

11   merely conclusory, unwarranted deductions of fact, or unreasonable inferences."  In re Gilead

12   Scis. Sec. Litig., 536 F.3d 1049, 1056-57 (9th Cir. 2008); Sprewell v. Golden State Warriors, 266

13   F.3d 979, 988 (9th Cir. 2001).  To "avoid a Rule 12(b)(6) dismissal, "a complaint must contain

14   sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."

15   Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009); see Bell Atl. Corp. v. Twombly, 550 U.S. 544,

16   555, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that

17   allows the court draw the reasonable inference that the defendant is liable for the misconduct

18   alleged."  Iqbal, 129 S.Ct. at 1949.  The Ninth Circuit has distilled the following principles from

19   *Iqbal* and *Twombly*:

20   
> First, to be entitled to the presumption of truth, allegations in a complaint or
> counterclaim may not simply recite the elements of a cause of action, but must
21   
> contain sufficient allegations of underlying facts to give fair notice and to enable
> the opposing party to defend itself effectively.  Second, the factual allegations that
22   
> are taken as true must plausibly suggest an entitlement to relief, such that it is not
> unfair to require the opposing party to be subjected to the expense of discovery
23   
> and continued litigation.

24   Starr v. Baca, 652 F.3d 1202, 1216 (9th Cir. 2011).  In deciding whether to dismiss a claim under

25   Rule 12(b)(6), the Court is generally limited to reviewing only the complaint, but it may take

26   judicial notice of public records outside the pleadings, review materials which are properly

27   submitted as part of the complaint, and review documents that are incorporated by reference in

28   the Complaint if no party questions their authenticity.  See Knievel v. ESPN, 393 F.3d 1068,

4

1076 (9th Cir. 2005); Lee v. City of Los Angeles, 250 F.3d 668, 688-89 (9th Cir. 2001).  In

determining whether a complaint states a claim, the court may not look beyond the complaint to a

plaintiff's moving papers, but the court may consider facts raised in opposition papers in

determining whether leave to amend should be granted.  See Broam v. Bogan, 320 F.3d 1023,

1026 n.2 (9th Cir. 2003).  If a Rule 12(b)(6) motion is granted, "[the] district court should grant

leave to amend even if no request to amend the pleading was made, unless it determines that the

pleading could not possibly be cured by the allegation of other facts."  Lopez v. Smith, 203 F.3d

1122, 1127 (9th Cir. 2000) (en banc).  In other words, leave to amend need not be granted where

amendment would be futile.  Gompper v. VISX, Inc., 298 F.3d 893, 898 (9th Cir. 2002).

## I.   KERN COUNTY DEFENDANTS[3]

### Defendants' Arguments

The Kern County Defendants argue that the TAC fails to state any cognizable claims for

several reasons.  First, the claims are repetitive, fail to adequately identify defendants, do not

contain any allegations against various county sub-entities, and is unduly ambiguous and

confusing.  Second, the TAC fails to identify any statute that imposes mandatory duties on public

entities, yet public entities cannot be liable for common law negligence.  Third, the Complaint

fails to allege compliance with the claims presentation requirements of the Government Claims

Act.[4]   Finally, various immunities, including prosecutorial immunity, apply in this case.

### Plaintiff's Opposition

Wilhite's arguments regarding the Kern County Defendants are not clear.  Wilhite

---

[3]With respect to the Docket sheet, "County Defendants" refers to the County of Kern.  However, the TAC includes other employees and entities of the County of Kern.  Those employees and entities include the Kern County District Attorney's Office, Valeta Wilde, the Kern County Counsel's Office (although the Court is unaware of any allegations against this defendant), the Kern County Sheriff's Personnel Division, Deputy Maxwell, Deputy Singa, and the Kern Medical Center.  Unless otherwise noted, analysis and discussion concerning the "County Defendants" will refer to each employee and entity of the County of Kern that is identified in the TAC.

[4]The County Defendants have submitted a request for judicial notice that contain three claims letters by Wilhite: a letter regarding Judge Brumfield/the Superior Court that was signed on April 11, 2011, a letter regarding the District Attorney's Office that was signed on May 18, 2011, and a claim letter against the District Attorney's office/request to file a late claim signed August 12, 2011.  See Doc. Nos. 9, 14.  A response to each letter by the County Counsel's Office is included in the request.  In the absence of an objection, the Court will grant the motion and take judicial notice of the documents as public records.

appears to argue that an August 31, 2010, claims letter to the City, a second claims letter to "all defendants" in April 2011, a letter sent to the Sheriff's office dated November 23, 2009,[5] two letters sent to the District Attorney's Office in December 2009, and telephone conversations with Assistant District Attorney Wilde in December 2009 and January 2010 all constitute sufficient claims presentation under the Government Claims Act.  Wilhite also contends that the TAC contains adequate allegations against the County Defendants.

    *Legal Standards*

    1.    California Government Code § 900 *et seq.* – California Government Claims Act

        As a prerequisite for filing a suit for "money or damages" against a public entity, the California Government Claims Act requires presentation of a claim to the public entity.  See Cal. Gov. Code § 945.4; State of California v. Superior Court, 32 Cal.4th 1234, 1240-44 (2004) ("Bodde").  Lawsuits that seek monetary relief based on claims sounding in tort, as well as claims sounding in contract, are lawsuits for "money or damages."  See City of Stockton v. Superior Court, 42 Cal.4th 730, 738 (2007); Sparks v. Kern County Bd. of Supervisors, 173 Cal.App.4th 794, 798 (2009).  Claims relating to a cause of action for death or injuries to the person or injuries to personal property must be presented no later than six months after the accrual of the cause of action.  See Cal. Gov. Code § 911.2(a); Bodde, 32 Cal.4th at 1239; Schmidt v. Southern Cal. Rapid Transit Dist., 14 Cal.App.4th 23, 25-26 (1993).  The term "injury" means "death, injury to a person, damage to or loss of property, or any other injury that a person may suffer to his person, reputation, character, feelings, or estate, of such nature that it would be actionable if inflicted by a private person."  Cal. Gov. Code § 810.8; Holt v. Kelly, 20 Cal.3d 560, 564 n.4 (1978); Ovando v. County of Los Angeles, 159 Cal.App.4th 42, 63 n.7 (2008).  The Government Claims statutes "must be satisfied even in the face of the public entity's actual knowledge of the circumstances surrounding the claim."  City of Stockton, 42 Cal.4th at 738; City of San Jose v. Superior Court, 12 Cal. 3d 447, 455 (1974).  "Timely claim presentation

---

[5] In the opposition, Wilhite references Exhibits 33 and 33B with respect to the November 23, 2009 letter to the Kern County Sheriff's Department.  The Court is not aware of an Exhibit 33B.  However, Exhibit 33 has a hand-written notation across the top that states the document is a copy of the Kern County Sheriff's Office complaint filed 11/23/2009.  See Doc. No. 33 at Ex. 33.  The Court will view Exhibit 33 in Doc. No. 33 as the November 23, 2009, letter that Wilhite is relying upon.

is not merely a procedural requirement, but is . . . a condition precedent to a plaintiff maintaining

an action against [a public entity], and thus [is] an element of the plaintiff's cause of action."

Shirk v. Vista Unified Sch. Dist., 42 Cal.4th 201, 209 (2007); Bodde, 32 Cal.4th at 1240.

Accordingly, the failure to timely present a claim for money or damages to a public entity bars

the plaintiff from bringing suit against that entity.  City of Stockton, 42 Cal.4th at 738; Bodde, 32

Cal.4th at 1239; Sparks, 173 Cal.App.4th at 738.  In federal court, the failure to allege facts that

either demonstrate or excuse compliance with the Government Claims statutes will subject a

state law claim to dismissal.  Mangold v. California Pub. Utils. Comm'n, 67 F.3d 1470, 1477 (9th

Cir. 1995); Karim-Panahi v. Los Angeles Police Dept., 839 F.2d 621, 627 (9th Cir. 1988).

Relatedly, California Government Code § 950.2 mandates that "a cause of action against

a public employee . . . for injury resulting from an act or omission in the scope of his

employment as a public employee is barred unless a timely claim has been filed against the

employing public entity."  Fowler v. Howell, 42 Cal.App.4th 1746, 1750 (1996).  The California

Legislature "included in the [Government] Claims Act what amounts to a requirement that . . .

one who sues a public employee on the basis of acts or omissions in the scope of the defendant's

employment [must] have filed a claim against the public-entity employer pursuant to the

procedure for claims against public entities."  Briggs v. Lawrence, 230 Cal. App. 3d 605, 612-13

(1991) (citing Cal. Gov. Code §§ 911.2, 945.4, 950.2, 950.6(a)).  In federal court, the failure to

allege compliance with the Government Claims statutes with respect to a public employee will

subject state law claims to dismissal.  Karim-Panahi, 839 F.2d at 627.

In presenting a claim to a public entity such as a city or a county, including an application

to file a late claim, a plaintiff is required to either deliver the claim "to the clerk, secretary, or

auditor" of the public entity, or mail the claim "to the clerk, secretary, auditor, or to the

governing body at its principal office."  Cal. Gov. Code § 915(a); Westcon Construction Corp. v.

County of Sacramento, 152 Cal.App.4th 183, 200 (2007).  Through the doctrine of substantial

compliance, it is possible for a claim to be sent to the wrong person or entity, yet still satisfy §

915.  See Westcon, 152 Cal.App.4th at 202; Life v. County of Los Angeles, 227 Cal.App.3d 894,

899 (1991).  However, substantial compliance with § 915 requires that a misdirected claim be

7

1    "actually received" by the appropriate person or board within the time prescribed for presentation

2    of such a claim.  See Cal. Gov. Code § 915(e)(1); Del Real v. City of Riverside, 95 Cal.App.4th

3    761, 769 (2002); Munoz v. State of California, 33 Cal.App.4th 1767, 1780 (1995). If a plaintiff

4    does not comply with § 915, he cannot pursue his claims against a public entity.  See Del Real,

5    95 Cal.App.4th at 770; Life, 227 Cal.App.3d at 901.

6          2.       Fourteenth Amendment Due Process – Medical Treatment

7          The Eighth Amendment's protections do not attach until after a person has been

8    convicted and sentenced.  See Graham v. Connor, 490 U.S. 386, 393 n.6 (1989); Jones v.

9    Johnson, 781 F.2d 769, 771 (9th Cir. 1986).  The Fourteenth Amendment's due process clause,

10   and not the Eighth Amendment, applies to and protects pre-trial detainees with respect to medical

11   treatment.  See Simmons v. Navajo County, 609 F.3d 1011, 1017 (9th Cir. 2010); Jones, 781

12   F.2d at 771.  Nevertheless, Eighth Amendment standards are utilized in evaluating the claims of

13   pretrial detainees with respect to medical treatment.  Simmons, 609 F.3d at 1017; Frost v. Agnos,

14   152 F.3d 1124, 1128 (9th Cir. 1998).

15         A violation of the right to adequate medical care requires that a plaintiff show "that the

16   officials acted with deliberate indifference in failing to respond to a serious medical need."

17   Frost, 152 F.3d at 1130; see Simmons, 609 F.3d at 1017; Jones, 781 F.2d at 771.  "A 'serious'

18   medical need exists if the failure to treat a prisoner's condition could result in further significant

19   injury or the 'unnecessary and wanton infliction of pain.'"  McGuckin v. Smith, 974 F.2d 1050,

20   1059-60 (9th Cir. 1992), overruled on other grounds WMX Techs., Inc. v. Miller, 104 F.3d 1133

21   (9th Cir. 1997).  "Examples of conditions that are 'serious' in nature include an injury that a

22   reasonable doctor or patient would find important and worthy of comment or treatment; the

23   presence of a medical condition that significantly affects an individual's daily activities; or the

24   existence of chronic and substantial pain."  Lopez v. Smith, 203 F.3d 1122, 1131 (9th Cir. 2000).

25   "Prison officials are deliberately indifferent to a prisoner's serious medical needs when they

26   deny, delay, or intentionally interfere with medical treatment . . . . Mere negligence in diagnosing

27   or treating a medical condition, without more, does not violate [the Constitution]."  Lopez, 203

28   F.3d at 1131.  "Where delay in receiving medical treatment is alleged, a prisoner must

8

1  demonstrate that the delay led to further injury." McGuckin, 974 F.2d at 1059.  The deliberate

2  indifference must be substantial, and "authorities have wide discretion regarding the nature and

3  extent of medical treatment." Jones, 781 F.2d at 771.  "A prison official cannot be liable for

4  deliberate indifference unless he or she knows of and disregards an excessive risk to inmate

5  health or safety; the official must both be aware of facts from which the inference could be drawn

6  that a substantial risk of serious harm exists, and he must also draw the inference." Simmons,

7  609 F.3d at 1017.

8      3.     42 U.S.C. § 1983 - *Monell* Liability

9      Although municipalities may be liable under 42 U.S.C. § 1983 for causing a

10  constitutional deprivation, municipalities "cannot be held liable solely because it employs a

11  tortfeasor – or, in other words, a municipality cannot be held liable under [42 U.S.C. § 1983]

12  under a *respondeat superior* theory." Monell v. Department of Soc. Servs., 436 U.S. 658, 690-

13  91 (1978); Long v. County of Los Angeles, 442 F.3d 1178, 1185 (9th Cir. 2006); Ulrich v. City

14  & County of San Francisco, 308 F.3d 968, 984 (9th Cir. 2002).  Liability only attaches where the

15  municipality itself causes the constitutional violation through "execution of a government's

16  policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be

17  said to represent official policy." Monell, 436 U.S. at 694; Ulrich, 308 F.3d at 984.  A "policy"

18  is a deliberate choice to follow a course of action . . . made from among various alternatives by

19  the official or officials responsible for establishing final policy with respect to the subject matter

20  in question." Fogel v. Collins, 531 F.3d 824, 834 (9th Cir. 2008); Long, 442 F.3d at 1185.  A

21  "custom" for purposes of municipal liability is a widespread practice that, although not

22  authorized by written law or express municipal policy, is so permanent and well-settled as to

23  constitute a custom or usage with the force of law." St. Louis v. Praprotnik, 485 U.S. 112, 127

24  (1988); Los Angeles Police Protective League v. Gates, 907 F.2d 879, 890 (9th Cir. 1990); see

25  also Bouman v. Block, 940 F.2d 1211, 231-32 (9th Cir. 1991).  Stated differently, a custom is a

26  widespread and longstanding practice that "constitutes the standard operating procedure of the

27  local government entity." Trevino, 99 F.3d at 918.  "Liability for improper custom may not be

28  predicated on isolated or sporadic incidents; it must be founded upon practices of sufficient

1  duration, frequency and consistency that the conduct has become a traditional method of carrying

2  out policy." Id.

3  *Discussion*

4     a.     District Attorney's Office & Assistant District Attorney Valeta Wilde

5          Wilhite alleges that these defendants failed to take appropriate legal steps to protect her

6  civil and legal rights despite her filing civil charges and her desire to press criminal charges

7  against Pori. See TAC at ¶¶ 30, 49-52.  Essentially, Wilhite complains that Wilde and the

8  District Attorney's office refused to prosecute and pursue Wilhite's complaints.  However, under

9  federal law, a California district attorney is not subject to liability under 42 U.S.C. § 1983 for

10  either a decision to prosecute or a decision not to prosecute.  See Roe v. City & County of San

11  Francisco, 109 F.3d 578, 583-84 (9th Cir. 1997).  Similarly, under California law, "[a]cts by a

12  public employee that are prepatory to a potential institution of judicial proceedings, including

13  acts in the course of an investigation of alleged wrongdoing, are covered by [California

14  Government Code § 821.6 immunity]."[6]  All Angels Preschool/Daycare v. County of Merced,

15  197 Cal.App.4th 394, 407 (2011).  "That employees ultimately decided against initiating . . .

16  proceedings does not render section 821.6 inapplicable. . . . [the] decision whether to initiate such

17  proceedings—whatever that decision is—is immunized." Jacqueline T. v. Alameda County

18  Child Protective Services, 155 Cal.App.4th 456, 468 n. 5 (2007) (citing Ingram v. Flippo, 74

19  Cal.App.4th 1280, 1293 (1999)).  Because Wilhite's claims against the District Attorney's office

20  and Wilde are based on the failure to prosecute/initiate legal proceedings, Wilde and the District

21  Attorney's office are entitled to immunity under state and federal law.  See Roe, 109 F.3d at 583-

22  84; Cal. Gov. Code §§ 815.2(b),[7] 821.6;  All Angles, 197 Cal.App.4th at 407; Jacqueline T., 155

23  Cal.App.4th at 468-69 & n.5.  The claims against Wilde and the District Attorney's office will be

24  dismissed without leave to amend and these Defendants will be dismissed from this case.

25  _____

26     [6]California Government Code § 821.6 reads: "A public employee is not liable for injury caused by his
   instituting or prosecuting any judicial or administrative proceeding within the scope of his employment, even if he

27  acts maliciously and without probable cause."

28     [7]California Government Code § 815.2(b) reads:  "Except as otherwise provided by statute, a public entity is
   not liable for an injury resulting from an act or omission of an employee of the public entity where the employee is
   immune from liability."

1       b.      State Law Claims

2       As the Court reads the TAC, Wilhite has alleged five state law causes of action against

3   either Kern County entities or Kern County employees – the Second, Third, Fourth, Tenth, and

4   Sixteenth causes of action.[8]  The alleged conduct of the Kern County entities and employees

5   (excluding the District Attorney's office and Wilde) occurred between November 2 and

6   November 5, 2009.  See TAC ¶¶ 21-23, 31-35, 43-46, 116, 169-178.  The claims against the

7   County Defendants stem from either a failure to provide medical care and treatment to Wilhite,

8   or the use of improper force against Wilhite.  See id.  Accordingly, the claims against the County

9   Defendants constitute personal injury claims, which means Wilhite had six months, until at the

10  latest April 5, 2010, in which to present a claim to Kern County.  See Cal. Gov. Code § 911.2.

11      The only date identified in the TAC for compliance is April 11, 2011.  See TAC at ¶ 12.

12  However, the April 11, 2011, date is not alleged in relation to the County Defendants.  See id.

13  Moreover, even if the Court reads the April 11, 2011 date as applying to the County Defendants,

14  April 11, 2011 is beyond the six month deadline of April 5, 2010.  Thus, the April 11, 2011 letter

15  is untimely.[9]  Because the Complaint does not contain allegations that indicate timely claims

16  presentation as to the County Defendants, dismissal of all state law claims against the County

17  Defendants is appropriate.  See Karim-Panahi, 839 F.2d at 627; City of Stockton, 42 Cal.4th at

18  738; Bodde, 32 Cal.4th at 1239.

19      With respect to the August 31, 2010 letter that Wilhite raises in opposition, Wilhite states

20  that this letter was sent to the City.  See Doc. No. 25 at p. 9:21-30.  A copy of the letter also

21  shows that it was addressed to the City Hall.  See Doc. No. 33 at Ex. 1.  However, the City of

22  Bakersfield and the County of Kern are separate and distinct entities.  Wilhite was required to

23  either deliver or mail a claim to the Kern County clerk, secretary, auditor, or  governing body.

24

25      [8]There are other causes of action that are alleged against "the City of Bakersfield and Does 1 through 12."

26  See, e.g., TAC at ¶ 8, 62, 89, 119.  However, those causes of action do not allege sufficient facts for the Court to
    conclude that a claim is actually intended against a Kern County entity or employee.

27      [9]Additionally, Wilhite has submitted a copy of one of the April 11, 2011, claims letters.  See Doc. No. 33 at

28  Ex. 2.  The letter identifies the various entities (and their respective addresses) who received a letter.  See id.
    However, the Kern County clerk, secretary, auditor or governing body is not identified as a recipient.  See id.; cf.
    Cal. Gov. Code § 915(a); Del Real, 95 Cal.App.4th at 770.

1    <u>See</u> Cal. Gov. Code § 915(a).  Sending her claim to the City of Bakersfield does not constitute

2    claims presentation on the County of Kern.  <u>See</u> <u>id.</u>; <u>Del Real</u>, 95 Cal.App.4th at 770.  Moreover,

3    even if the August 31, 2010 letter had been sent to the appropriate Kern County officer/body,

4    August 31, 2010 is well beyond the April 5, 2010 deadline, and thus, is untimely.  Therefore, the

5    August 31, 2010 letter does not constitute a valid claim as to the County Defendants, and

6    amendment on the basis of the August 31, 2010 letter would be futile.

7          With respect to the telephone calls to the District Attorney's office, these telephone calls

8    are insufficient.  First, the Government Claims Act requires that a written claim be presented to

9    the public entity.  <u>See</u> Gov. Code § 945.4; <u>Stockett v. Association of Cal. Water Agencies Joint</u>

10   <u>Powers Ins. Auth.</u>, 34 Cal.4th 441, 445 (2004).  It goes without saying that a telephone

11   conversation is not a written claim.  Second, the telephone calls were not made to Kern County's

12   clerk, secretary, auditor or governing body.  <u>See</u> Cal. Gov. Code § 915(a); <u>Del Real</u>, 95

13   Cal.App.4th at 770.  A claim must be presented to the individuals enumerated under Government

14   Code § 915.  <u>See</u> <u>Del Real</u>, 95 Cal.App.4th at 770.  Thus, the telephone calls do not constitute

15   valid claims, and amendment on the basis of the telephone calls would be futile.

16         With respect to the November 23, 2009 letter sent to the Sheriff's Office, this letter does

17   not constitute a Government Claims Act claim.  First, the letter was not sent to the Kern County

18   clerk, secretary, auditor or governing body.  <u>See</u> Cal. Gov. Code § 915(a); <u>Del Real</u>, 95

19   Cal.App.4th at 770.  Second, the letter describes "Officer Maxwell" applying pain holds on

20   Wilhite and mentions that a key chain was not returned to her.  <u>See</u> Doc. No. 33 at Ex. 33.

21   However, the letter only states that Wilhite wants Maxwell fired.  <u>See</u> <u>id.</u>  The letter does not

22   meet the requirements of § 910, gives no indication that Wilhite is attempting to state a claim for

23   money, does not mention medical treatment, and does not indicate that litigation will result if

24   Wilhite's claims are not satisfactorily addressed.  <u>See</u> Cal. Gov. Code § 910; <u>Page v. Mira Costa</u>

25   <u>Comm. Coll. Dist.</u>, 180 Cal.App.4th 471, 493 (2009); <u>Del Real</u>, 95 Cal.App.4th at 770; Doc. No.

26   33 at Ex. 33.  For these reasons, the November 23, 2009, letter to the Sheriff's Office does not

27   constitute a valid Government Claims Act claim, and amendment on the basis of the November

28   23, 2009, letter would be futile.

With respect to the two letters sent to the District Attorney's office in December 2009, these letters do not constitute a claim.  First, the letters were not sent to the Kern County clerk, secretary, auditor or governing body.  See Cal. Gov. Code § 915(a); Del Real, 95 Cal.App.4th at 770.  Second, the letters do not meet the requirements of § 910, give no indication that they are attempting to state a claim for money, and do not indicate that litigation will result if Wilhite's claims are not satisfactorily addressed.  See Cal. Gov. Code § 910; Page, 180 Cal.App.4th at 493; Del Real, 95 Cal.App.4th at 770; Doc. No. 33 at Exs. 52A, 52B.  The first letter describes the attack against Wilhite by Pori, describes Wilhite's injuries, and states that Wilhite wants to press criminal charges against Pori.  See Doc. No. 33 at Ex. 52A.  The second letter is lengthier but is in the same vein: Wilhite describes her injuries, states that she wishes to pursue claims against Pori, puts forth explanations as to why Pori attacked her, and describes how her outlook on life has changed.  See Doc. No. 33 at Ex. 52B.  The letters nowhere indicate that monetary damages against public entities or public employees are at issue, do not complain about the absence of adequate medical care, and do not discuss excessive force by public employees.  See Doc. No. 33 at Exs. 52A, 52B; cf. Page, 180 Cal.App.4th at 493.  For these reasons, the December 2009 letters to the District Attorney do not constitute a valid Government Claims Act claim, and amendment on the basis of the December 2009 letters would be futile.

Finally, Wilhite cites Government Code § 911.6(b)(3) and states, "plaintiff was physically or mentally incapacitated by the alleged injury, damage and loss sustained during all of the time specified in § 911.2 for the presentation of the claim and by reason of such disability failed to present a claim during such time."  Doc. No. 30 at 9:12-16.  Government Code § 911.6(b)(3) requires a public entity's governing board to grant a request to file a late claim where the claimant was physically or mentally incapacitated during the relevant limitations period, and because of that disability failed to present a timely government claim.  See Cal. Gov. Code § 911.6(b)(3).

However, citation to § 911.6(b)(3) does not help Wilhite for several reasons.  First, § 911.6(b) addresses the circumstances in which a public entity must grant a claimant permission to present a late claim; it does not deal with filing a timely claim under § 911.2.  See id.  Second,

there is no evidence that Wilhite has submitted any requests to file late claims with respect to the County Defendants.[10]   Wilhite has relied heavily on two letters throughout her opposition, the August 2010 letter and the April 2011 letter, but these letters are inadequate.  Neither the August 2010 letter nor the April 2011 letter requests permission to file a late claim, neither letter contends that Wilhite was incapacitated, and neither letter explains why the letters were being presented on late dates.  Cf. Doc. No. 33 at Exs. 1, 2 with Cal. Gov. Code § 911.4.  The Court is aware of no other documents or letters that could arguably constitute a late claims request as to the County Defendants.  Third, the exhibits that Wilhite has submitted do not indicate that she was incapacitated for a material period of time.  The December 28, 2009, letter to the District Attorney states that Wilhite was in a wheelchair for 3 ½ weeks after Pori's attack.  See Doc. No. 33 at Ex. 52B.  However, other exhibits indicate that Wilhite has remained active relative to this litigation by composing correspondences as early as November 19, 2009, see Doc. No. 33 at Ex. 32, making communications to defendants and entities, and attempting to pursue civil judicial proceedings.  At the very best, the evidence suggests incapacitation for a period of 3 to 4 weeks, but no longer.  A 3 to 4 week tolling period would not sufficiently affect the deadlines of either § 911.2 or § 911.4.[11]   Fourth, in a document entitled "Petition for Declaratory Relief of Plaintiff's Compliance To Provisions of Govt Code § 945.4," Wilhite nowhere explains or contends that she suffered incapacitation.  See Doc. No. 28.  For these reasons, Wilhite's contentions regarding incapacitation are not persuasive, and amendment based on such contentions would be futile.

In sum, the TAC fails to allege compliance with the claims presentation requirements of the California Government Claims Act.  The arguments and exhibits presented do not indicate that Wilhite has complied the Government Claims Act with respect to the County Defendants, and the Court sees no way for Wilhite to allege timely compliance.  Accordingly, dismissal of the

---

[10]The County Defendants did submit a late claims request as part of their request for judicial notice. However, that request dealt with claims against the district attorney's office and was dated August 12, 2011.  Since the claims against the County accrued in November 2009, Wilhite had until November 2010 in order to submit a request to file a late claim.  See Cal. Gov. Code § 911.4(a) (late claim application may be made within a reasonable time, but not to exceed one year of the cause of action's accrual date).  August 2011 is well beyond November 2010.

[11]Even considering a 3 to 4 week incapacitation, this would mean that Wilhite had until December 2010 in which to file a late application.  See Cal. Gov. Code § 911.4(a); Footnote 11, supra.  Again, there is no evidence that Wilhite requested permission to file a late claim as to the County Defendants prior to December 2010.

1    five state law causes of action against the County Defendants without leave to amend is

2    appropriate.[12]

3         c.    Federal Claims

4         There are two 42 U.S.C. § 1983 causes of action alleged against the County Defendants –

5    the thirteenth and fourteenth causes of action.  The Court will address these claims separately.

6              1.    Fourteenth Cause of Action

7         Wilhite alleges that, while she was at the jail, Deputy Maxwell "physically abused

8    plaintiff while she was injured and in restraints by the intentional and repeated use of excessive

9    pressure to her injuries, specifically to her fractured thumb, further aggravating her injuries."  See

10   TAC at ¶ 156.   In the "Attachment" to the TAC, Deputy Maxwell is identified as Doe 5 and as

11   an employee of the Kern County Sheriff's Office.  See Doc. No. 2-1 at p. 3 of 81.

12        "The Fourth Amendment sets the applicable constitutional limitations for considering

13   claims of excessive force during pretrial detention."  Lolli v. County of Orange, 351 F.3d 410,

14   415 (9th Cir. 2003).  Under the Fourth Amendment, "the question is whether the officers' actions

15   are 'objectively reasonable' in light of the facts and circumstances confronting them, without

16   regard to their underlying intent or motivation."  Graham v. Connor, 490 U.S. 386, 397 (1989);

17   Lolli, 351 F.3d at 415.  "Force is excessive when it is greater than is reasonable under the

18   circumstances."  Santos v. Gates, 287 F.3d 846, 854 (9th Cir. 2002).  Here, the allegation is that

19   Deputy Maxwell applied repeated and excessive force to a fractured thumb, and that he

20   "physically abused" Wilhite.  This allegation can be fairly read to mean that the repeated use of

21   pressure on an injured thumb was not reasonable under the circumstances.  Wilhite has

22   sufficiently alleged an excessive force claim against Maxwell.  Dismissal of this cause of action

23   against Maxwell is inappropriate.

24        Additionally, Maxwell is sued in both his individual and official capacities.  See TAC at

25   ¶¶ 146, 155.  A suit against an individual in his official capacity is the equivalent of suing the

26

27        [12]Wilhite's opposition appears to indicate that other causes of action are intended to be alleged against
     some or all of the County Defendants.  If Wilhite intends to amend her complaint to allege other state law claims
28   against the County Defendants, she must be able to allege facts that show compliance with the Government Claims
     Act, and those allegations must be consistent with the analysis in this order.

entity who employs the individual.  See McMillian v. Monroe County, 520 U.S. 781, 785 n.2 (1997); Mitchell v. Dupnik 75 F.3d 517, 527 (9th Cir. 1996).  Since Deputy Maxwell is alleged to be a deputy in the Kern County Sheriff's Office, this cause of action is also alleged against Kern County.  A municipality "cannot be held liable solely because it employs a tortfeasor – or, in other words, a municipality cannot be held liable under [42 U.S.C. § 1983] under a respondeat superior theory."  Monell, 436 U.S. at 691; Ulrich, 308 F.3d at 984.  Liability only attaches where the municipality itself causes the constitutional violation through "execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy."  Monell, 436 U.S. at 694; Ulrich, 308 F.3d at 984.  Here, there are no allegations that identify a government policy or custom, there are no allegations that identify how the policy or custom is deficient, and there are no allegations that Wilhite's injuries by Maxwell were caused through the execution of a government policy or custom.  See Young v. City of Visalia, 687 F.Supp.2d 1141, 1149-50 (E.D. Cal. 2009).  Without such allegations, there is no valid municipal liability claim alleged.  Thus, dismissal of this claim against Kern County is appropriate.

Finally, Maxwell is not identified as a party on the docket sheet and the Court sees no indication that Maxwell has made an appearance in this case.  The County Defendants represent that, prior to removal, the Kern County Superior Court permitted Wilhite to name Maxwell as Doe 5.  See Doc. No. 13 at 2:11-14.  The allegations under the fourteenth cause of action expressly identify Maxwell.  Further, Maxwell is identified in the Attachment to the TAC and Paragraph 21 of the TAC as being a Kern County Sheriff's deputy.  In light of these circumstances, the Court will order the Clerk to add Deputy Maxwell to the docket as a defendant.  Wilhite will be ordered to serve Deputy Maxwell as soon as possible and consistent with the 120 day limitations period contained in Federal Rule of Civil Procedure 4(m).

### 2.    Thirteenth Cause of Action

This cause of action alleges violations of the Eighth and Fourteenth Amendments. Wilhite alleges that the County Defendants acted with deliberate indifference to serious medical needs.  See Complaint ¶ 148.  Wilhite also alleges that jail staff failed to provide medical

treatment and failed to photograph her injuries.  See Complaint ¶ 147.  Wilhite appears to allege

that she had pain and numbness in her left thumb, left hand, and both legs.  See id. & ¶ 8.  As

explained below, there are problems with these allegations, and this cause of action will be

dismissed.[13]

First, the TAC does not allege that Wilhite was a convicted prisoner.  Instead, the

allegations indicate that Wilhite was a pre-trial detainee when she was at the detention facility.

See Complaint at ¶ 147.  Because the Eighth Amendment's protections do not attach until after

conviction and sentence, dismissal of the Eighth Amendment claim without leave to amend is

appropriate.  See Graham, 490 U.S. at 393 n.6; Jones, 781 F.2d at 771.  Nevertheless, the Eighth

Amendment standards for medical treatment are utilized for a pre-trial detainee's Fourteenth

Amendment medical treatment claims.  See Simmons, 609 F.3d at 1017; Frost, 152 F.3d at 1128.

Second, taking photographs is not medical treatment.  Therefore, the failure to take

photographs cannot violate constitutional requirements for the provision of medical treatment.

Cf. Lopez, 203 F.3d at 1131.  Dismissal of any Fourteenth Amendment medical treatment claims

based on the failure to take photographs will be dismissed without leave to amend.

Third, the Complaint does not adequately allege Wilhite's medical condition.  That is, the

allegations do not sufficiently allege and describe a "serious medical condition."  See Lopez, 203

F.3d at 1131; McGuckin, 974 F.2d at 1059-60.  Without proper allegations that describe and

show a "serious medical condition," see id., the Court is simply left to guess at the nature of

Wilhite's injuries as they existed on November 2 through November 5, 2009.  Further, the TAC

does not adequately allege that Defendants were actually aware of any "serious medical

conditions."  Without actual knowledge by the defendants of Wilhite's "serious medical

condition," there is no liability.  See Simmons, 609 F.3d at 1017.  In the absence of allegations

that show the existence of "serious medical conditions" and knowledge of those medical

---

[13]There is an allegation that an unknown defendant failed to provide adequate and sufficient personnel and
facilities in violation of what appears to be a state statute, "Statute § 114.71."  However, relief under 42 U.S.C. §
1983 is only available for violations of federal law; violations of state law by themselves are not actionable.  See
Woodward v. Andrus, 419 F.3d 348, 353 (5th Cir. 2005); Ybarra v. Bastian, 647 F.2d 891, 892 (9th Cir. 1981).
Therefore, violation of the apparent state statute "§ 114.71" is not actionable under 42 U.S.C. § 1983.

conditions by the County Defendants, the TAC does not state a medical treatment claim.[14]

Fourth, it is not entirely clear which defendants are included under this cause of action, although it is apparent that some Kern County defendants are included.  In her opposition, Wilhite clarifies that the cause of action is intended to be alleged against the City, Deputy Maxwell, Deputy Singa, an unknown Doe defendant, and Kern County.[15]  This clarification is helpful, but it cannot save this cause of action as pled.  See Broam, 320 F.3d at 1026 n.2.  The cause of action needs to expressly identify which particular defendants are intended to be included.  Furthermore, because multiple defendants are envisioned, Wilhite must identify how each defendant violated her Fourteenth Amendment right to adequate medical treatment.[16]  See Bryson v. Gonzales, 534 F.3d 1282, 1290 (10th Cir. 2008) (holding that where government agencies and government actors are sued under 42 U.S.C. § 1983, "it is particularly important . . . that the complaint make clear exactly who is alleged to have down what to whom, [in order] to provide each individual [defendant] with fair notice of as to the basis of the claims against him . . . .");  Refai v. Lazaro, 614 F.Supp.2d 1103, 1116 (D. Nev. 2009) (same).  Given the numerous Defendants who are named in the TAC, simply alleging that "defendants" violated Wilhite's right to medical treatment is insufficient.

Finally, this cause of action includes allegations against Does 5 and 6, who are Deputies Maxwell and Singa, in their individual and official capacities.  See TAC at ¶ 146.  Again, because the deputies are sued in part in their official capacities, Kern County is also a defendant under this cause of action.  See McMillian, 520 U.S. at 785 n.2; Mitchell, 75 F.3d at 527.  Like

---

[14]The Court has placed the term "serious medical condition" in quotation marks because "serious medical condition" is a legal term.  If Wilhite chooses to amend her complaint, she will be required to identify the medical condition(s) at issue and, consistent with cases like *Lopez* and *McGuckin*, allege what makes the condition(s) "serious."  It will be insufficient to simply allege the legal conclusion that Wilhite had a "serious medical condition."

[15]Instead of Kern County, Wilhite actually identifies the Kern County Sheriff's Personnel Division.  However, the Sheriff's Personnel Division is simply an arm of Kern County.  See Abeytia v. Fresno Police Dep't, 2009 U.S. Dist. LEXIS 49500, *24-*25 (E.D. Cal. June 12, 2009).

[16]Clarifying which defendants are included in this cause of action, as well as what each defendant did to violate Wilhite's rights, is especially important with respect to the jail/detention facility.  At some points in the TAC, it appears that the facility was operated by the City, but at other points it appears that the facility was operated by the County.  E.g. TAC at ¶¶ 112, 115. If Wilhite chooses to amend this cause of action, she must allege which entity, either the City or the County, controlled and ran the detention facility.

the fourteenth cause of action, the TAC fails to identify a government policy or custom, fails to

allege deficiencies in the policies, and does not adequately allege how Wilhite's injuries were

caused through the execution of policies or customs.  See Young, 687 F.Supp.2d at 1149-50.

Because there is no respondeat superior liability under 42 U.S.C. § 1983, the TAC does not

allege a valid claim against Kern County.

In sum, the thirteenth cause of action is not sufficiently pled.  Allegations are required

that: (1) clearly identify which defendants are included and what those defendants did to violate

Wilhite's constitutional rights; (2) identify Wilhite's serious medical condition and establish the

County Defendants' knowledge of those conditions; and (3) establish a government policy or

custom that caused Wilhite harm.  Because it is not clear that amendment would be futile, this

cause of action will be dismissed with leave to amend.

Additionally, the Attachment to the TAC identifies Deputy Singa as Doe 6 and further

identifies him as a Kern County Sheriff's Deputy.  See also TAC at ¶ 21.  The TAC expressly

makes allegations against Deputy Singa, see TAC at ¶ 44, and the County Defendants

represented that the Superior Court granted Wilhite permission to name Deputy Singa as Doe 6

prior to removal.  Like Deputy Maxwell, the Court will order the Clerk to add Deputy Singa to

the docket as a defendant.  Wilhite will be ordered to serve Deputy Singa as soon as possible and

consistent with the 120 day limitations period contained in Federal Rule of Civil Procedure 4(m).

d.    Joint Commission Office of Quality Monitoring ("JCOQM")

The JCOQM is named in the TAC as a defendant, but there are no allegations listed

against the JCOQM.  Thus, there are no claims pled against this entity.  In her opposition,

Wilhite indicates that she wishes to substitute the JCOQM in the place of Kern Medical Center.

The basis of this substitution is not explained.  The Kern Medical Center is owned and operated

by Kern County.  See Gonzales v. United States, 2012 U.S. Dist. LEXIS 2015 (E.D. Cal. Jan. 6,

2012); Jadwin v. County of Kern, 610 F.Supp.2d 1129, 1135 (E.D. Cal. 2009); County of Kern v.

State Dept. of Health Care Servs., 180 Cal.App.4th 1504, 1507 (2009).  The TAC alleges only

two causes of action against the Kern Medical Center, the second cause of action (count three)

and the third cause of action.  Both of these claims against the Kern Medical Center involve

1  inadequate medical treatment and arise under state law.[17]  See TAC ¶¶ 25-26, 32-34.  The Court

2  sees no basis for the JCOQM to take the place of Kern Medical Center.

3        Because there are no claims alleged against the JCOQM in the TAC, Kern Medical

4  Center is part of Kern County, and there is no apparent basis for the JCOQM to take the place of

5  Kern Medical Center, the Court will dismiss any of the TAC's intended claims against the

6  JCOQM at this time.  However, since the Court is unsure about how the JCOQM is involved in

7  this case, out of an abundance of caution, the dismissal will be with leave to amend.  If Wilhite

8  chooses to include JCOQM in an amended complaint, she must explain:  how and why the

9  JCOQM should be a part of this case, whether the Government Claims Act requirements apply to

10  the JCOQM, and, if the Government Claims Act applies, whether the Act's requirements were

11  met as to the JCOQM.

12

13  **II.    JUDICIAL DEFENDANTS' MOTION TO DISMISS**[18]

14        *Defendants' Arguments*

15        The Judicial Defendants argue that they should be dismissed from this case for several

16  reasons.  First, this Court lacks jurisdiction because Wilhite's claims are barred by absolute

17  judicial immunity, Eleventh Amendment immunity, and the *Rooker-Feldman* doctrine. Second,

18  Wilhite has failed to comply with the claims presentation requirements of the Government

19  Claims Act.  Third, immunity under Government Code § 821.6 is appropriate because the

20  conduct of Judge Brumfield at issue occurred during judicial proceedings.  Similarly, Wilhite's

21  claim for defamation is barred by Civil Code § 47 because the allegedly defamatory statements

22  occurred during judicial proceedings.

23        *Plaintiff's Opposition*

24        Wilhite argues that she complied with the Government claims act when she served the

25

26        [17]The Court notes that the Government Claims Act applies to public health care providers.  See Wood v.
27  Riverside General Hosp., 25 Cal.App.4th 1113 (1994).  The TAC's allegations against the Kern Medical Center
   stem from conduct that occurred on November 5, 2009.  As discussed above, there was no timely compliance with
   either Government Code § 911.2 or Government Code § 911.4.

28        [18]The "Kern County Judicial Defendants" are the Kern County Superior Court and Judge Lorna Brumfield.

City with a notice of claim on August 31, 2010.  The August 31, 2010, date is within two months

of the improper conduct of June 2010, within six months of the improper conduct occurring on

March 2010, and within ten months of the improper conduct occurring on November 2009.

Further, as part of a document that purports to be a petition for declaratory relief, Wilhite states

that she presented a claim to each public entity on April 12, 2011.  See Doc. No. 28 at Ex. E ¶

6.[19]  With respect to immunity, Wilhite argues that she has alleged fraudulent conduct.  Because

fraudulent conduct is involved, § 822.2 is applicable and defeats immunity.  Finally, Wilhite

argues that absolute immunity is not appropriate because her allegations indicate that the Judicial

Defendants violated statutes, which indicates conduct that is done outside of all jurisdiction.

   *Discussion*

   There are myriad problems with Wilhite's claims against the Judicial Defendants.

   First, with respect to the state law causes of action, as explained above, timely claims

presentation to a public entity is an element of a cause of action against that entity, and the failure

to timely present a claim for money or damages to the entity bars the plaintiff from bringing suit.

City of Stockton, 42 Cal.4th at 738; Shirk, 42 Cal.4th at 209; Bodde, 32 Cal.4th at 1239.  Any

state law claims against the Judicial Defendants were required to be delivered or mailed to the

court executive officer of the Kern County Superior Court.  See Cal. Gov. Code § 915(c)(1).  The

allegations regarding the Judicial Defendants span dates ranging from November 2009 to June

2010.  Because the causes of action alleged against the Judicial Defendants are all in the nature of

personal injuries, Wilhite had six months to present a timely claim to the executive officer of the

Kern County Superior Court.  See Cal. Gov. Code § 911.2.  However, the complaint does not

adequately allege compliance with the Government Claims Act.  The only date identified in the

TAC for compliance is April 11, 2011, but that allegation does not relate to the Judicial

Defendants.  See TAC at ¶ 12.  Thus, there are no allegations of compliance related to the

---

[19]An example of the April 12, 2011, letter is represented as being filed as "Exhibit 2A."  See Court's
Docket Doc. No. 28 at Ex. E ¶ 6. The Court is unaware of any "Exhibit 2A."  However, Exhibit 2 to Docket No. 33
is a claims letter that has a file stamp of April 12, 2011.  The file stamp is from the Kern County Superior Court
clerk.  The Court takes Wilhite's reference to "Exhibit 2A" to be Exhibit 2 in Docket No. 33.

Judicial Defendants.  Further, even if the Court read the April 11, 2011 date as applying to the Judicial Defendants, April 2011 is beyond six months of the alleged dates of improper conduct by the Judicial Defendants.  Therefore, the April 11, 2011 letter would be untimely.  Because the TAC does not contain allegations that indicate timely claims presentation to the executive officer of the Kern County Superior Court, dismissal of all state law claims is appropriate.  See Karim-Panahi, 839 F.2d at 627; City of Stockton, 42 Cal.4th at 738; Bodde, 32 Cal.4th at 1239.

Additionally, as part of her opposition, Wilhite contends that she can amend her complaint to allege compliance with the claims presentation requirements.  Wilhite states that an August 31, 2010 claims letter was sent to the City.  See Doc. No. 25 at p. 9:21-30.  However, Wilhite was required to send her notice of claim to the executive officer of the Kern County Superior Court.  See Cal. Gov. Code § 915(c)(1).  Sending her claim to the City of Bakersfield is insufficient.  See id.; Del Real, 95 Cal.App.4th at 770.  Critically, there is no indication that Wilhite has ever filed a Government Claims Act claim with the executive officer of the Kern County Superior Court.[20]  Cf. Del Real, 95 Cal.App.4th at 770; Life, 227 Cal.App.3d at 901.  The Court sees no way for Wilhite to comply with the claims presentation requirements of the Government Claims Act.  See Karim-Panahi, 839 F.2d at 627; Cal. Gov. Code §§ 911.2, 9.15(c)(1), 945.4, 950.2; City of Stockton, 42 Cal.4th at 738; Bodde, 32 Cal.4th at 1239; Del Real, 95 Cal.App.4th at 770; Life, 227 Cal.App.3d at 901.

Second, even if the state law claims presentation requirements could be met, the Judicial Defendants are entitled to state law immunities.  The conduct alleged against the Judicial Defendants concern either docket entries that were part of state court proceedings, see Complaint at ¶¶ 76-80, judgments and proceedings in state court lawsuits, see id. at ¶¶ 54-58, 79, 84, 123, or the refusal to accept additional civil lawsuits/petitions by Wilhite on the basis that the same claims had been resolved by a previous judicial proceeding.  See id. at ¶ 30; Doc. No. 33 at Exs.

---

[20]Exhibit 2, the April 2011 claims letter, lists the identity and addresses of each recipient entity, but the executive officer of the Kern County Superior Court is not listed.  See Doc. No. 33 at Ex. 2.  Further, Exhibit A to the County Defendant's Request for Judicial Notice contains an April 11, 2011 claims letter against Judge Brumfield/the Superior Court, but that letter was not directed to the executive officer of the Kern County Superior Court and Wilhite was so informed by the County.  See Doc. No. 14 at Ex. A.

39, 47, 48.[21]  All of the conduct at issue occurred in either an active lawsuit or in the process of

attempting to file a lawsuit.  In other words, the conduct occurred in the context of the judicial

process and as part of the judicial function of Judge Brumfield and the Kern County Superior

Court.  Therefore, immunity under Government Code § 821.6, Civil Code 47(b)(2),[22] and

California common law judicial immunity is appropriate for these claims.  See Cal. Civ. Code §

47(b); Cal. Gov. Code §§ 815.2(b), 821.6; Soliz v. Williams, 74 Cal.App.4th 577, 585-89

(1999); Frost v. Geernaert, 200 Cal.App.3d 1104, 1107-09 (1988); Paddleford v. Biscay, 22

Cal.App.3d 139, 143 (1971).  With the application of these immunities, dismissal of the state law

claims is appropriate.[23]  See id.

Third, Wilhite's fourth cause of action is ambiguous.  To the extent that this cause of

action challenges the Superior Court's judgment and holdings with respect to Wilhite's

unsuccessful civil lawsuits, see Complaint at ¶¶ 54-58, 79, the cause of action is barred by the

Rooker-Feldman doctrine.  See Noel v. Hall, 341 F.3d 1148, 1164 (9th Cir. 2004) ("If a federal

plaintiff asserts as a legal wrong an allegedly erroneous decision by the state court, and seeks

relief from a state court judgment based on that decision, Rooker-Feldman bars subject matter

jurisdiction in federal district court.").

Finally, with respect to any attempted 42 U.S.C. § 1983 claims against the Judicial

---

[21]Exhibits 47 and 48 are printouts of the Kern County Superior Court docket.  The exhibits show that
Wilhite attempted to file lawsuits.  In particular, she filed "request[s] for orders to stop harassment."  The "requests"
were returned to Wilhite.  The entries explain that the "requests" were being returned because:  "Per Judge
Brumfield, no hearing will be set at this time.  The allegations are the same as those contained in the petition
previously filed under case S-1500-cv-268805."  Doc. No. 33 at Exs. 47, 48.  Case S-1500-cv-268805 was resolved
by Judge Brumfield on December 17, 2009, when she denied Wilhite's "harassment petition" and dissolved a
previously issued restraining order.  See id. at Ex. 39.

[22]California Civil Code § 47(b)(2) reads: "A privileged publication or broadcast is one made: . . . (b) In any
. . . (2) judicial proceeding."

[23]Contrary to Wilhite's arguments, Government Code § 822.2, which deals with liability for a public
employee's misrepresentations, defeats neither common law judicial immunity nor immunity under Government
Code § 821.6.  See Tur v. City of Los Angeles, 51 Cal.App.4th 897, 901-02 (1996); Frost, 200 Cal.App.3d at 1107-
09.  Further, Civil Code § 47(b) immunity is an absolute privilege that bars all tort causes of action except for
malicious prosecution.  See Hagberg v. California Fed. Bank, 32 Cal.4th 350, 360 (2004).

1    Defendants, immunity bars such claims.[24]  Because the Kern County Superior Court is an arm of

2    the state of California, the Eleventh Amendment bars 42 U.S.C. § 1983 claims against that court.

3    See Simmons v. Sacramento County Superior Court, 318 F.3d 1156, 1161 (9th Cir. 2003); Los

4    Angeles Council on Deafness, Inc. v. Zolin, 812 F.2d 1103, 1110 (9th Cir. 1987).  Because

5    Wilhite dealt with Judge Brumfield in Judge Brumfield's capacity as a judge, because the nature

6    of Judge Brumfield's conduct (i.e. making and explaining rulings, controlling the docket,

7    interacting with litigants, and evaluating the evidence) is that typically associated with a judge

8    who is resolving a case, and because there is nothing that even remotely suggests that Judge

9    Brumfield acted in the complete absence of all jurisdiction, Judge Brumfield is entitled to

10   absolute judicial immunity.  See Mireles v. Waco, 502 U.S. 9, 11-13 (1991); Stump v. Sparkman,

11   435 U.S. 349, 362 (1973); Moore v. Brewster, 96 F.3d 1240, 1243-45 (9th Cir. 1996).  Thus,

12   because Eleventh Amendment and absolute judicial immunity would apply, dismissal of any 42

13   U.S.C. § 1983 claims against the Judicial Defendants is appropriate.

14          In sum, the claims against the Judicial Defendants are barred through either the

15   application of federal law immunities (for federal claims), state law immunities (for state law

16   claims), or the claims presentation requirements of the California Government Claims Act (for

17   state law claims).  The Court sees no way for Wilhite to allege valid causes of action against the

18   Judicial Defendants.  Accordingly, all claims against the Judicial Defendants will be dismissed

19   without leave to amend, and the Judicial Defendants will be dismissed from this case.

20

21   **III.     BAKERSFIELD DEFENDANTS' MOTION TO DISMISS[25]**

22          *Defendants' Arguments*

23          The Bakersfield Defendants argue that dismissal is appropriate because the Complaint

24          ————————————————

25          [24]The Court sees only 3 federal causes of action alleged in this case – the thirteenth, fourteenth, and
     fifteenth causes of action.  These causes of action are not alleged against the Judicial Defendants and do not involve

26   any conduct by the Judicial Defendants.  Nevertheless, because Wilhite is *pro se* and has addressed the federal
     immunity arguments, the Court will assume that Wilhite intends some form of 42 U.S.C. § 1983 claim against the

27   Judicial Defendants for the conduct identified under the second, fourth, sixth, and seventh causes of action.

28          [25]The "Bakersfield Defendants" refer to the City, the City of Bakersfield Police Department, the
     Bakersfield Police Department Communications Center, Officer Michael Johns, Officer Robert Pair, Officer Nathan
     McCauley, Officer Michael Malley, and Terrye Steiner.

                                          24

1  fails to show compliance with the Government Claims Act.  As alleged in the Complaint, the

2  causes of action all accrued on November 2, 2009.  However, the Complaint alleges that Wilhite

3  did not file a claim with the City until April 11, 2011.  Because Wilhite had six months from

4  November 2, 2009, to file a claim, her April 11, 2011, claim is untimely and does not comply

5  with the mandatory statutes.[26]

6          The Bakersfield Defendants also argue that the TAC fails to adequately allege any valid

7  causes of action.  The fraud based claims fail to comply with the heightened pleading

8  requirements of Rule 9.  The negligence claims against the City fail to identify a statute that

9  imposes a mandatory duty.  The tort of defamation is not pled with sufficient specificity.

10         The Bakersfield Defendants also argue that the City of Bakersfield Police Department

11  ("BPD") and the Bakersfield Police Department Communications Center ("BPDCC") should be

12  dismissed from this suit because they are not separate entities.  Instead, the BPDCC is a part of

13  the BPD, and the BPD is a part of the City.

14         Finally, the City argues that it is not subject to punitive damages under either 42 U.S.C. §

15  1983 or under state law.

16         *Opposition*

17         Wilhite seeks leave to amend her complaint to include an allegation that, on August 31,

18  2010, Wilhite submitted a claim for $385,000 to the City.  Wilhite has also submitted a copy of

19  the August 31 letter.  The letter is stamped "received" by the Bakersfield City Attorney's Office

20  and what appears to be the Bakersfield City Clerk on August 30, 2010.  See Doc. No. 24.

21  Wilhite also seems to argue that a letter sent to the BPD dated November 19, 2009,[27] two letters

22  sent to the District Attorney's Office in December 2009, and telephone conversations with

23  Assistant District Attorney Wilde in December 2009 and January 2010, constitute sufficient

24

25         [26]The Bakersfield Defendants request that the Court take judicial notice of a claims rejection letter sent to
     Wilhite dated May 3, 2011.  See Doc. Nos. 7-2, 7-3.  The rejection letter states that Wilhite's claim was rejected as
26  untimely and informs Wilhite that her only recourse is for leave to file a late claim.  See id.  In the absence of an
     opposition, the Court will grant the Bakersfield Defendants' request for judicial notice.

27         [27]In the opposition, Wilhite references Exhibits 32 and 32A with respect to the November 19, 2009,
     complaint to the BPD.  The Court is not aware of an Exhibit 32A.  However, Exhibit 32 has a hand-written notation
28  across the top that the document is a copy of the "BPD complaint filed 11/19/2009."  See Doc. No. 33 at Ex. 32.
     The Court will view Exhibit 32 in Doc. No. 33 as the November 19, 2009, letter that Wilhite is relying upon.

compliance with Government Claims Act.  Wilhite also contends that she did not become aware that some of the acts of the City police officers were injurious until after the Superior Court rejected her civil claims.  Specifically, Wilhite contends that she did not discover some of the harms until 3 ½ months after the November 1, 2009, attack.

Wilhite also argues that the TAC states valid claims.  Wilhite contends that Civil Code §§ 52.1 and 3333, and Government Code §§ 815.2, 815.6, and 822.2, impose liability on the City.

*Discussion*

1.      Redundant Defendants

In the context of 42 U.S.C. § 1983 claims, it has been held that naming the sub-unit of a municipality as a defendants is redundant when the municipality itself is already a named defendant.  See Abeytia v. Fresno Police Dep't, 2009 U.S. Dist. LEXIS 49500, *24-*25 (E.D. Cal. June 12, 2009).  Since the City is a named defendant, naming the BPD and the BPDCC is redundant for purposes of 42 U.S.C. § 1983 claims.  See id.  Further, in light of the City's representations to this Court, the Court sees no good reason to keep either the BPD or the BPDCC in this case for purposes of the state law claims.  Accordingly, the BPD and the BPDCC will be dismissed from this lawsuit as redundant parties.

2.      State Law Claims

a.      Government Claims Act Compliance

The Complaint alleges various acts by the Bakersfield Defendants that occurred over a period of several months.  The TAC specifically identifies conduct that occurred in November 2009, January 2010, March 2010, and June 2010.  All of the alleged conduct are in the nature of personal injuries.  This means that Wilhite had six months to file a timely Government Claims Act claim with the City.  See Cal. Gov. Code § 911.2(a); Bodde, 32 Cal.4th at 1239.  The only allegation in the TAC that deals with Government Claims Act compliance alleges that Wilhite submitted a claim to the City on April 11, 2011.  See TAC at ¶ 12.  April 2011, however, is well beyond the six month limitations period for any conduct occurring between November 2009 and June 2010.  Since the Complaint fails to allege timely compliance with Government Code § 911.2, dismissal of all state law claims is appropriate.

Wilhite contends that she has in fact complied with the Government Claims Act. Wilhite's position on compliance regarding the City is nearly the same as her position with respect to the County Defendants. As discussed above, the letters and the telephone calls to the district attorney are insufficient. Further, those communications were not directed to the City clerk, secretary, auditor, or governing board, and thus would have no effect as to the City. See Cal. Gov. Code § 915; Del Real, 95 Cal.App.4th at 770. Amendment based on letters and telephone calls to the district attorney's office is futile.

The letter of November 19, 2009, has not been discussed. Nevertheless, this letter suffers from the same flaws as the November 23, 2009, letter sent to the Kern County Sheriff's Office. First, the letter was not sent to the City clerk, secretary, auditor or governing body. See Cal. Gov. Code § 915(a); Del Real, 95 Cal.App.4th at 770. Second, the letter describes Wilhite's arrest, that Wilhite was attacked by Pori, that Wilhite was in need of medical treatment but received next to none, and that she believed that her rights were violated. See Doc. No. 33 at Ex. 32. However, the letter states that Wilhite asks that officers not rush to as many calls as possible in a day, but to do good police work by finding out what is going on before an arrest is made (including getting names, going inside the home, account for persons' injuries, survey, and get both sides of a story). See id. Wilhite closes the letter by saying that it is not hard to figure out what a person has been doing in the last 5 minutes, and that an officer has to want to do a better job because "it is not just going to happen." Id. However, the letter does not meet all of the requirements of § 910, does not indicate that Wilhite is attempting to state a claim for money, and does not indicate that litigation will result if Wilhite's claims are not satisfactorily addressed. See Cal. Gov. Code § 910; Page, 180 Cal.App.4th 471, 493 (2009); Del Real, 95 Cal.App.4th at 770; Doc. No. 33 at Ex. 32. Therefore, the November 19, 2009, letter is not a valid Government Claims Act claim, and amendment based on the November 19, 2009, letter would be futile.

With respect to the August 2010, letter, there is an indication that the letter was received by the City Clerk in August 2010. Cf. Doc. No. 24 at Ex. 1 with Doc. No. 33 at Ex. 1. This letter would be within six months of conduct that allegedly occurred in March and June 2010, and would be within 1 year of conduct that occurred in November 2009 and January 2010. The

City's only response to the August 2010 letter at this point is that the letter exceeds the six month

limitations period.[28]   Although the letter is untimely with respect to the six month limitations

period for conduct that occurred in November 2009 and January 2010, it is possible for this

defect to be waived.  See Cal. Gov. Code § 911.3.  In the absence of additional arguments from

the City, the Court will allow amendment based on the August 2010 letter.[29]

However, part of the claims against the Bakersfield Defendants are based on their

investigation and report of the events of November 1, 2009.  Government Code § 821.6 reads:

"A public employee is not liable for injury caused by his instituting or prosecuting any judicial or

administrative proceeding within the scope of his employment, even if he acts maliciously and

without probable cause."  "This section applies to police officers as well as public prosecutors

since both are public employees within the meaning of the Government Code."  Randle v. City

and County of San Francisco, 186 Cal. App. 3d 449, 456 (1986); see Johnson v. City of Pacifica,

4 Cal.App.3d 82, 85 (1970).  "Acts by a public employee that are prepatory to a potential

institution of judicial proceedings, including acts in the course of an investigation of alleged

wrongdoing, are covered by [§ 821.6]."  All Angels, 197 Cal.App.4th at 407.  Thus, § 821.6

immunity applies to the investigations and resulting reports of law enforcement officers who are

investigating a crime.  See Amylou R. v. County of Riverside, 28 Cal.App.4th 1205, 1209-10,

1213 (1994); Randle, 186 Cal.App.3d at 456-57; Johnson, 4 Cal.App.3d at 84-88.  Further, §

821.6 immunity is not limited to claims for malicious prosecution, but also extends to other

causes of action arising from conduct protected by the statute, including defamation, intentional

infliction of emotional distress, and Civil Code § 52.1.  See County of Los Angeles v. Superior

Court, 181 Cal.App.4th 218, 231 (2009); Gillan v. City of San Marino, 147 Cal.App.4th 1033,

1048 (2007).  Section § 821.6 also is not defeated by allegations of conspiracy.  See Citizens

Capital Corp. v. Spohn, 133 Cal.App.3d 887, 889 (1982).  Here, because the TAC clearly shows

that Officers Johns and Pair were acting within the course and scope of their duties as police

[28]This response is not surprising since the City was asked to reply to Document 33, but mistakenly not asked to respond to Document 24.

[29]By allowing amendment, the Court is not prohibiting the Bakersfield Defendants from challenging the sufficiency of the August 2010 letter at a later time, nor is the Court holding that there has been a § 911.3 waiver.

officers when they investigated the events of November 1 or November 2, 2009, and prepared their report, § 821.6 immunity for conduct based on either the investigation or the resulting report is appropriate.  See  Amylou R., 28 Cal.App.4th at 1209-10, 1213; Randle, 186 Cal.App.3d at 456-57; Johnson, 4 Cal.App.3d at 84-88.  Further, because these officer are entitled to immunity, the City is also entitled to immunity.  See Cal. Gov. Code § 815.2(b); County of Los Angeles, 181 Cal.App.4th at 232.  Therefore, because the Bakersfield Defendants are immune under § 821.6 and § 815.2(b) from liability based on the investigation and resulting report of the events of November 1 or November 2, 2009, irrespective of compliance with the Government Claims Act, amendment would be futile.  Wilhite will not be permitted to include in her amended complaint any causes of action against the Bakersfield Defendants that are based on the investigation of November 1 or November 2, 2009, and the resulting report.[30]

      b.    Amendment

The City identifies additional shortcomings in the TAC, but does so in a rather conclusory basis.  Given that the state law claims will be dismissed, and given the brief nature of the City's arguments, the Court will not sift through each cause of action of the 80 page TAC at this time. Instead, the Court will discuss additional requirements for Wilhite to follow if she chooses to file an amended complaint.

First, to allege direct liability against a public entity, Wilhite must expressly identify a specific statute that creates liability.  See Young, 687 F.Supp.2d at 1164-65.  California Government Code § 815.6 is insufficient because that statute merely states the rule that an entity is liable for a breach of a mandatory duty – it does not itself impose a mandatory duty.  See Cal. Gov. § 815.6.  Civil Code § 3333 also does not identify or establish a mandatory duty because that section simply states the measure of damages available in a non-contract case.  See Cal. Civ. Code § 3333.  Further, if Wilhite intends to hold an entity indirectly liable through the doctrine of respondeat superior, then she should allege that conduct was done in the course and scope of

---

[30]However, claims for false arrest and false imprisonment are not covered by § 821.6.  Gillan, 147 Cal.App.4th at 1050-51.  Therefore, the amended complaint may contain causes of action against the appropriate Bakersfield Defendants for false arrest/false imprisonment.  See id.

1  employment and expressly identify Government Code § 815.2(a).[31]

2      Second, there are numerous doe defendants in the TAC.  Some the Doe defendants have

3  been identified.  To the extent that a doe defendant has been named/identified, then that person's

4  name should replace any allegation against a "doe."

5      Third, there are numerous defendants identified.  Each cause of action should identify

6  which defendant is allegedly liable and what each defendant specifically did to be liable.  Simply

7  stating that the allegation is against the "defendants" does not provide adequate notice to the

8  individual defendants and the separate entities.

9      Fourth, to the extent that a fraud or misrepresentation claim remains viable, the complaint

10  must specifically include "an account of the time, place, and specific content of the false

11  representations as well as the identities of the parties to the misrepresentations."  Swartz v.

12  KPMG LLP, 476 F.3d 756, 764 (9th Cir. 2007); see Fed. R. Civ. Pro. 9(b).  Further, a plaintiff

13  must "differentiate [her] allegations when suing more than one defendant . . . and inform each

14  defendant separately of the allegations surrounding his alleged participation in the fraud."

15  Swartz, 476 F.3d at 764-65.

16      Fifth, Federal Rule of Civil Procedure 8 requires "short and plain" statements that show

17  the plaintiff is entitled to relief.  See Fed. R. Civ. Pro. 8(a).  However, conclusory allegations that

18  lack any factual support are insufficient.  A plaintiff must allege enough facts for the court to

19  "draw the reasonable inference that the defendant is liable for the misconduct alleged."  Iqbal,

20  129 S.Ct. at 1949.  That is, there should be sufficient factual allegations that support each

21  element of a cause of action.  Here, the complaint is highly repetitive and too lengthy.  If Wilhite

22  chooses to file an amended complaint, she should include a section that describes the general

23  factual background that underlies her complaints (similar to the "factual background" section of

24  this order).  Instead of repeating paragraphs under each cause of action, she need only incorporate

25  by reference a specific, applicable paragraph from this section under a particular cause of action.

26

27      [31] Additionally, the TAC contains references to section numbers, but does not identify from which statutory
code these sections come.  For example, at Paragraph 30, sections 58.62, 257.87, and 464.24 are identified.  If, for

28  example, these sections are part of the California Civil code (but they are not), then the allegation should clearly
reference the Civil Code, i.e. "Civil Code §§ 58.62, 257.87, and 464.24."

1   Additional facts that apply to a particular cause of action can then be added so that a cause of

2   action may show "facial plausibility."  See id.  Given the nature of the allegations and the parties

3   who will remain after this order, and considering Wilhite's pro se status, any amended complaint

4   should be in the ball park of 30 pages (or less).

5          Sixth, the March 4, 2010, and June 1, 2010, dates alleged against the Bakersfield

6   Defendants appear to correspond to the dates when Judge Brumfield refused to permit Wilhite to

7   refile civil claims/petitions for protective orders against Pori.  See TAC at ¶ 30 (relying on March

8   2010 and June 2010 docket entries of the Kern County Superior Court and alleging that

9   defendants did nothing after being informed that Wilhite was falsely arrested, accused, and

10  attacked, but instead alleged discrimination and misrepresentation against Wilhite).  The refusal

11  to permit Wilhite to pursue these civil claims is conduct that rests with Judge Brumfield.  No

12  Bakersfield Defendant (nor any County Defendant) had the ability to prohibit Wilhite's refiled

13  matters from proceeding. If Wilhite amends her complaint to include allegations against the

14  Bakersfield Defendants that are based on the March 2010 and June 2010 Superior Court refilings,

15  then Wilhite must expressly allege how the Bakersfield Defendants could be liable.[32]

16         3.     Federal Claims

17         The TAC includes two causes of action under 42 U.S.C. § 1983 against the Bakersfield

18  Defendants – the thirteenth and fifteenth causes of action.  The Court will address each cause of

19  action separately.

20         a.     Fifteenth Cause of Action

21         This cause of action is entitled in part, " Claim For Damages Against Local Government

22

_____

23  [32]If Wilhite is intending to rely on some form of conspiracy for liability, then she must include allegations
    that identify which defendants conspired, an agreement/meeting of the minds between the defendants to harm
24  plaintiff, how the defendants conspired, the object of the conspiracy, wrongful conduct done in furtherance of the
    conspiracy, and how Wilhite was harmed from the conspiracy.  See Harris v. Roderick, 126 F.3d 1189, 1196 (9t h
25  Cir. 1997); Marchese v. Umstead, 110 F.Supp.2d 361, 371 (E.D. Pa. 2000); Applied Equipment Corp. v. Litton
    Saudi Arabia Ltd., 7 Cal.4th 503, 510-11 (1993); Kidron v. Movie Acquisition Corp., 40 Cal.App.4th 1571, 1582
26  (1995).  "The requisite concurrence and knowledge may be inferred from the nature of the acts done, the relation of
    the parties, the interests of the alleged conspirators, and other circumstances."  Wyatt v. Union Mortgage Co., 24
27  Cal.3d 773, 785 (1979).  However, under California law, "[c]onspiracy is not an independent tort; it cannot create a
    duty or abrogate an immunity.  It allows tort recovery only against a party who already owes the duty and is not
28  immune from liability based on applicable substantive tort law principles."  Applied Equipment, 7 Cal.4th at 514.
    By discussing the pleading requirements, the Court is not ruling on the validity of a conspiracy claim.

Entity." Wilhite claims that the First Amendment, Sixth Amendment, Eighth Amendment, and Fourteenth Amendment were violated, and that she was deprived of her rights to free speech, to compulsory due process, and to petition for redress of grievances.  See TAC at ¶¶ 158, 161.  The conduct alleged under the fifteenth cause of action is negligently investigating, filing a false and misleading report, and producing a fraudulent copy of an emergency call.  See id. at ¶¶ 160, 162, 164.  The TAC indicates that the policies, customs, and practices of the City/the BPD were deliberately indifferent and caused Wilhite harm.  See id. ¶¶ 165-167.  There are problems with these allegations.

First, the "Sixth Amendment does not govern civil cases."  Turner v. Rogers, 131 S.Ct. 2507, 2516 (2011).  The only allegations regarding judicial proceedings are in regards to Wilhite's civil suits and attempted civil suits against Pori.  There are no allegations regarding criminal lawsuits against Wilhite.  Accordingly, the Sixth Amendment does not apply in this case.  Dismissal of any Sixth Amendment claims without leave to amend is appropriate.  See id.

Second, as stated above, there are no indications that Wilhite was ever convicted and sentenced.  Therefore, the Eighth Amendment does not apply to Wilhite  See Graham, 490 U.S. at 393 n.6; Jones, 781 F.2d at 771.  Dismissal of the Eighth Amendment claim without leave to amend is appropriate.  See id.

Third, the TAC fails to explain how Wilhite's First Amendment rights to free speech were violated.  For example, there are no allegations that Wilhite was retaliated against on the basis of her speech.  See, e.g., Dietrich v. John Ascuaga's Nugget, 548 F.3d 892, 900-01 (9th Cir. 2008).  Merely stating that a right was violated without any explanation is an insufficient threadbare allegation.  See Iqbal, 129 S.Ct. at 1949-50.  Without allegations that describe Wilhite's speech and explain how the City violated her right to free speech, no claim is stated.  Because it is not clear that amendment of this claim would be futile, dismissal of the First Amendment free speech claim with leave to amend is appropriate.

Fourth, the TAC fails to allege how the City violated Wilhite's First Amendment right to petition for redress of grievances.  There is simply an allegation that the City violated this right.  Such a threadbare allegation is insufficient.  See Iqbal, 129 S.Ct. at 1949-50.  Like the free

1   speech claim, because it is not clear that amendment would be futile, Wilhite's First Amendment

2   petition for redress claim will be dismissed with leave to amend.

3       Fifth, the TAC fails to adequately identify which Fourteenth Amendment right is at issue

4   or how the City violated the right.  There is simply an allegation that the City violated the

5   Fourteenth Amendment, which is an insufficient threadbare allegation.  See Iqbal, 129 S.Ct. at

6   1949-50.  Without an allegation the identifies the particular Fourteenth Amendment right at

7   issue, and explains how the City violated that right, the TAC fails to state a claim.  Because it is

8   not clear that amendment would be futile, Wilhite's Fourteenth Amendment claim will be

9   dismissed with leave to amend.

10      Sixth, as noted above, this cause of action is alleged against the City.  However, the TAC

11  dos not adequately identify what particular policies and practices are at issue, how those policies

12  or practices are deficient, or explain how those policies and practices caused Wilhite harm.  See

13  Young, 687 F.Supp.2d at 1149-50.  The TAC alleges that the policies of the City at issue were

14  established on January 28, 2010, by a Doe employee.  See TAC at ¶ 165.  The decisions of final

15  policy making officials can support liability against a municipality under 42 U.S.C. § 1983.  See

16  Menotti v. City of Seattle, 409 F.3d 1113, 1147 (9th Cir. 2005).  However, there are no

17  allegations that the Doe defendant had final policy making authority, nor again is there an

18  identification of the policy at issue.  Without allegations that identify the policies and practices at

19  issue, show that Wilhite suffered harm because of the execution of those policies and practices,

20  and show that a final policy making employee established the policies and practices (to the extent

21  that Wilhite relies on this theory of municipal liability), no claim for municipal liability under 42

22  U.S.C. § 1983 is alleged.  Because it is not clear that amendment would be futile, dismissal with

23  leave to amend is appropriate.[33]

24      In sum, dismissal of this cause of action is appropriate for many reasons.  No valid claims

25  are possible for violations of the Sixth and Eighth Amendments, so dismissal of those claims will

26  be with prejudice.  However, it is not clear that amendment would be futile with respect to the

27

28      [33]The Court notes that if Wilhite's position is that the relevant policies and practices by the City were
established on January 28, 2010, then there is no municipal liability under 42 U.S.C. § 1983 for conduct that
occurred prior to January 28, 2010.

First and Fourteenth Amendment claims, so dismissal of those claims will be with leave to amend.  Further, since this cause of action is against the City under municipal liability principles, any amended complaint must identify the specific policy and practice at issue, allege how those policies and practices are deficient, and allege how Wilhite's injuries were caused by the policies and practices.  See Young, 687 F.Supp.2d at 1149-50.

                   **b.**      **Thirteenth Causes of Action**

As discussed in connection with the County Defendants' motion, the thirteenth cause of action complains about the failure to provide Wilhite with medical treatment and the failure to photograph Wilhite's injuries in violation of the Eighth and Fourteenth Amendments.  For the same reasons discussed under the County Defendants' motion, this cause of action fails to state a claim and will be dismissed.  As discussed under the County Defendants' motion, the Eighth Amendment claim and the Fourteenth Amendment claim based on the failure to take photographs will be dismissed without leave to amend, but the remainder of the Fourteenth Amendment claim will be dismissed with leave to amend.

        **4.**      **Punitive Damages**

Punitive damages against a municipality may not be recovered under 42 U.S.C. § 1983.  See City of Newport v. Facts Concert, Inc., 453 U.S. 247, 271 (1981); Mitchell, 75 F.3d at 527.  Similarly, California law forbids the imposition of punitive damages against a public entity under California Civil Code § 3294.  See Cal. Gov. Code §§ 811.2, 818; Wells v. One2One Learning Foundation, 39 Cal.4th 1164, 1196 n.20 (2006); Helfend v. Southern Cal. Rapid Trans. Dist., 2 Cal.3d 1, 8 (1970).  Accordingly, dismissal of all punitive damages claims against all public entity defendants, including the City, is appropriate.


## IV.   MISCELLANEOUS MOTIONS BY PLAINTIFF

As part of her of opposition, Wilhite filed *inter alia* a motion to amend her complaint (Doc. No. 24), a motion for declaratory relief with respect to compliance with the California Government Claims Act (Doc. No. 28), and a motion for declaratory and injunctive relief with respect to the issues of absolute and qualified immunity (Doc. No. 29).  Wilhite also filed a

second motion for relief from the Government Claims Act in January 2012 (Doc. No. 42).

### 1.   Motion To Amend

The motion to amend will be denied as moot because the Court's analysis in resolving these motions to dismiss permit and set the parameters for an amended complaint.

### 2.   Motion For Declaratory Relief Regarding Immunity

Wilhite's motion for declaratory relief with respect to absolute and qualified immunity relates to the immunity of Judge Brumfield.  The Court has determined that Judge Brumfield is entitled to absolute immunity.  Therefore Wilhite's motion will be denied.

### 3.   Motion For Declaratory Relief Regarding Government Code § 946.6

With respect to the Judicial Defendants, as discussed above, they are immune under both state and federal law.  Because the Judicial Defendants are immune, relief from the Government Claims Act would have no effect on their dismissal.  Thus, the motion will be denied with respect to the Judicial Defendants.

As for the County Defendants, relief under § 946.6 is dependent upon a petitioner showing that she followed § 911.4 by submitting a timely request to file a late claim with a public entity.  See Cal. Gov. Code § 946.6(b); Kagy v. Napa State Hospital, 28 Cal.App.4th 1, 4-5 (1994).  Here, there is no evidence that Wilhite filed either a timely § 911.2 notice of claim or a timely § 911.4 request to file a late claim with the Kern County clerk, auditor, secretary, or governing board.  Wilhite's petition for relief relies on the November 23, 2009, letter to the Sheriff's office, the August 2010 letter to the City, the April 11, 2011 letter, and an August 2011 letter that was sent to unknown recipients.  See Doc. No. 28 at Ex. E ¶¶ 4-6.  As explained above, the November 23, 2009, letter does not constitute a claim under the Government Claims Act, and it did not request additional time to file a late claim.  Also as explained above, the August 2010 letter was sent to the City, not to the County.  Therefore, the August 2010 letter can have no effect with respect to claims against the County Defendants.  Also as explained above, the April 2011 letter was not sent to the Kern County clerk, secretary, auditor, or governing body.  Further, that letter did not seek additional time to file a claim, did not explain why a claim had not been previously filed, and was not filed within one year of the November 2009 (or December 2009

with four weeks of tolling applied) accrual date.  See Cal. Gov. Code § 911.4; Brandon G. v. Gray, 111 Cal.App.4th 29, 34 (2003) (noting that no relief is available if the § 911.4  application is filed beyond the one year limitations period).  As for the August 2011 letter, there is insufficient evidence that the claim was ever sent to or received by the Kern County clerk, secretary, auditor, or governing body.  Moreover, an August 2011 letter would have been well beyond the one year limitations period under § 911.4, since the claims alleged against the County Defendants accrued in November 2009 (or December 2009 if four weeks of tolling is applied). See Cal. Gov. Code § 911.4; Brandon G., 111 Cal.App.4th at 34.  Accordingly, Wilhite has not shown that she is entitled to relief under § 946.6, and the motion will be denied with respect to the County Defendants.

With respect to the Bakersfield defendants, the Court will deny Wilhite's motion without prejudice at this time.  Wilhite will be permitted to amend her complaint to include an allegation regarding the August 2010 letter to the City, as well as other allegations regarding compliance with the Government Claims Act.  If the City chooses to challenge such allegations in another motion, Wilhite will be permitted to re-raise and re-argue the applicability of Government Code § 946.6 as part of an opposition.

## CONCLUSION

Defendants in this case have filed multiple motions to dismiss.  As explained above, the vast majority of the motions have merit.  Of the challenged claims, dismissal will be denied only with respect to the federal claim against Deputy Maxwell.  All other causes of action are subject to dismissal.  The five state law claims against the County Defendants, any federal claims based on either the Sixth or Eighth Amendments, and the Fourteenth Amendment medical treatment claims based on the failure to take photographs, will all be dismissed without leave to amend. Based on state and federal immunities, as well as the failure to comply with the California Government Claims Act, the Judicial Defendants, the District Attorney's Office, and Valeta Wilde all will be dismissed from this case without leave to amend.  As explained above, all other causes of action will be dismissed with leave to amend.  However, any amended complaint must

conform to the analysis of this order, as well as the requirements of Federal Rules of Civil Procedure 8 and 9.

**ORDER**

Accordingly, IT IS HEREBY ORDERED that:

1.  The Judicial Defendants' motion to dismiss is GRANTED without leave to amend and Judge Lorna Brumfield and the Kern County Superior Court are DISMISSED from this lawsuit;

2.  The County Defendants' motion to dismiss is GRANTED in part and DENIED in part as follows:

    a.  The District Attorney's Office and Valeta Wilde are DISMISSED from this case;

    b.  The five state law claims alleged against the County Defendants are DISMISSED without leave to amend;

    c.  The thirteenth cause of action for violation of the Fourteenth Amendment based on the taking of photographs and for violation of the Eight Amendment are DISMISSED without leave to amend, but the remaining Fourteenth Amendment claim is DISMISSED with leave to amend;

    d.  The fourteenth cause of action is DISMISSED with leave to amend as to Kern County, but dismissal is DENIED with respect to Deputy Maxwell;

3.  All claims alleged against the Joint Commission Office of Quality Monitoring are DISMISSED with leave to amend;

4.  The Bakersfield Defendants' motion to dismiss is GRANTED in that;

    a.  All state law claims that are based on the police investigation of the events of November 1 or November 2, 2009, and the resulting report(s), are DISMISSED without leave to amend;

    b.  All other state law claims are DISMISSED with leave to amend;

    c.  The thirteenth cause of action for violation of the Fourteenth Amendment based on the taking of photographs and for violation of the Eight Amendment are

1   DISMISSED without leave to amend, but the remaining Fourteenth Amendment

2   claim is DISMISSED with leave to amend;

3       d.    The fifteenth cause of action is DISMISSED with leave to amend claims based on

4   the First Amendment and Fourteenth Amendment, but DISMISSED without leave

5   to amend as to claims based on the Sixth Amendment and the Eighth

6   Amendment;

7   5.    All punitive damages claims against public entity defendants are DISMISSED without

8   leave to amend;

9   6.    The Clerk shall add as party defendants to this lawsuit "DEPUTY MAXWELL" and

10   "DEPUTY SINGA";

11   7.    Wilhite's motion to amend (Doc. No. 24) is DENIED as moot because the Court is

12   permitting amendment as described in this order;

13   8.    Wilhite's petition for declaratory relief regarding immunity (Doc. No. 29) is DENIED;

14   9.    Wilhite's petition for relief under California Government Code § 946.6 (Doc. Nos. 28,

15   42) is DENIED as to the Judicial Defendants and the County Defendants, but is DENIED

16   without prejudice as to the Bakersfield Defendants; and

17   10.    Wilhite may file a Fourth Amended Complaint, that is consistent with the instructions

18   and analysis of this order, within thirty (30) days of service of this order.

19   IT IS SO ORDERED.

20   Dated:    January 30, 2012

21   CHIEF UNITED STATES DISTRICT JUDGE